# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEON ROOP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-413-SPS |
| | ) |
| KANSAS CITY SOUTHER RAILWAY | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER DENYING DEFENDANT
## KANSAS CITY SOUTHERN RAILWAY COMPANY'S
## MOTION FOR SUMMARY JUDGMENT

The Plaintiff Deon Roop brought this action against Kansas City Southern Railway ("KCSR") under 49 U.S.C. § 20109, part of the Federal Railroad Safety Act ("FRSA"). The Plaintiff alleges that he engaged in activities protect under the FRSA, for which he was retaliated against and ultimately terminated from his employment with KCSR. Defendant KCSR now seeks summary judgment against the Plaintiff, pursuant to Fed. R. Civ. P. 56, asserting that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. For the reasons set forth below, the Court finds that the Defendant The Kansas City Southern Railway Company's Motion for Summary Judgment [Docket No. 45] should be DENIED.

Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "there is sufficient

evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party must show the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), with the evidence taken in the light most favorable to the non-moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).

The Plaintiff alleged in his Complaint that he engaged in protected activity by testifying against the railroad and on behalf of another employee in a FELA case against KCSR filed by that other employee, Mark Dunaway. He further alleges that, as a result, KCSR violated the FRSA by intimidating, harassing, and eventually terminating him, and that his protected activity on behalf of Mr. Dunaway was a contributing factor to his termination. KCSR asserts that the Plaintiff's claims are time-barred; that he did not engage in FRSA-protected activity; that even if he did engage in FRSA-protected activity, the relevant decisionmaker, Chad Devenney, was not aware of it; that he cannot show any protected activity was a contributing factor to the decision to terminate his employment; and that KCSR would have taken the same action absent any alleged protected activity.

Defendant KCSR first argues that the Plaintiff's claims are time-barred. "The FRSA requires that a party bringing a retaliation action file a charge within 180 days of the alleged violation. The statute 'precludes recovery for discrete acts of . . . retaliation that occur outside the statutory time period.' 'A party, therefore, must file a charge within [the

specified number of days] of the date of the [alleged retaliatory act] or lose the ability to recover for it.' Although recovery for any action outside the 180-day period is barred, an employee may still use 'the prior acts as background evidence in support of a timely claim.'" *Dunn v. BNSF Ry. Co.*, 2017 WL 3670559, at *8 (W.D. Wash. Aug. 25, 2017), *quoting Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 110, 113 (2002).

In this case, the claimant was terminated on September 21, 2015, and filed his claim with the United States Department of Labor's Occupational Safety and Health Administration on January 26, 2016, approximately 127 days later. This falls within the requisite 180-day period. The Court notes, however, that any retaliatory action allegedly taken prior to July 30, 2015, is not actionable, even though it is related to acts that are timely alleged.

Additionally, KCSR asserts that the Plaintiff did not engage in protected activity under the FRSA because he was not an employee at the time of his deposition, because his testimony was not a report of a violation of the law under the statute, and that it was not a report to someone with authority to take action. Roop contends that he *did* engage in protected activity, and the Court agrees.

"The FRSA incorporates by reference the rules and procedures applicable to [the] Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR-21") whistle blower cases,' which includes a burden shifting test. Under AIR-21's burden shifting test, a FRSA plaintiff must establish by a preponderance of the evidence that: (1) plaintiff engaged in protected activity; (2) the employer knew that plaintiff engaged in the protected activity; (3) plaintiff suffered an adverse action; and (4) the protected activity

was a contributing factor to the adverse action." *Lincoln v. BNSF Railway Co.*, 2017 WL 1437302, at *29 (D. Kan. April 24, 2017), *quoting Araujo v. New Jersey Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d Cir. 2013). "Protected activity under the act includes (1) lawfully and in good faith reporting a violation of federal law, rule, or regulation pertaining to railroad safety or security, (2) reporting hazardous safety conditions, and (3) seeking medical treatment for an on-duty injury." *Lincoln*, 2017 WL 1437302, at *29, *citing* 49 U.S.C. § 20109(a)-(b)(1)(A), and (c)(1)-(2). *See also Dunn v. BNSF Railway Co.*, 2017 WL 3670559, at *6 (W.D. Wash. Aug. 25, 2017) ("The FRSA specifies what constitutes a protected activity, grouping them generally into three categories: (1) providing information pertaining to the investigation of or proceeding about a violation of safety regulations, *see* 49 U.S.C. § 20109(a); (2) reporting or refusing to work around a hazardous safety condition, *see id.* § 20109(b); and (3) requesting medical treatment for a work-related injury*, see id.* § 20109(c).)

The Plaintiff's Complaint alleges violations of 49 U.S.C. §§ 20109(a)(1)(C), a(4), and (b)(1)(A) under the FRSA:

> **(a) In general.**--A railroad carrier engaged in interstate or foreign commerce, a contractor or a subcontractor of such a railroad carrier, or an officer or employee of such a railroad carrier, may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done--
> > **(1)** to provide information, directly cause information to be provided, or otherwise directly assist in any investigation regarding any conduct which the employee reasonably believes constitutes a violation of any Federal law, rule, or regulation relating to railroad safety or security, or gross fraud, waste, or abuse of Federal grants or other public funds intended to be used for railroad safety or security,

> if the information or assistance is provided to or an investigation
> stemming from the provided information is conducted by--
>> **(C)** a person with supervisory authority over the employee or
>> such other person who has the authority to investigate,
>> discover, or terminate the misconduct;
>
> **(4)** to notify, or attempt to notify, the railroad carrier or the Secretary
> of Transportation of a work-related personal injury or work-related
> illness of an employee;
>
> **(b) Hazardous safety or security conditions.—**
>> **(1)** A railroad carrier engaged in interstate or foreign commerce, or
>> an officer or employee of such a railroad carrier, shall not discharge,
>> demote, suspend, reprimand, or in any other way discriminate
>> against an employee for--
>>> **(A)** reporting, in good faith, a hazardous safety or security
>>> condition;

49 U.S.C. §§ 20109(a)(1)(C), a(4), and (b)(1)(A). Namely, the Plaintiff asserts that he engaged in protected activity as follows: (i) under § 20109(a)(1)(C)[1], when he testified, *inter alia*, as to the oil in the locomotive being a slip and fall hazard; (ii) under § 20109(a)(4), by testifying about unknown or undisclosed details of co-worker Mark Dunaway's injury; and (iii) under § 20109(b)(1)(A), by testifying about unknown and undisclosed details of the hazardous safety condition that injured Mr. Dunaway. *See* Docket No. 2, pp. 8-10. This is somewhat complicated by the Plaintiff's assertion that his protected activity is not the actions he took and statements he provided around the time of Mr. Dunaway's injury in late 2011, but rather his 2013 testimony *about* those events. *See, e. g.*, *Foster v. BNSF Ry. Co.*, 866 F.3d 962, 968 (8th Cir. 2017) ("We assume for the sake

---

[1] The Court notes that, beginning with the OSHA complaint and continuing with the Complaint filed before this Court, *see* Docket No. 2, pp. 8-10, and No. 46, Ex. 28, pp. 12-14, the Plaintiff transposed the numbers for the statutory citations of 49 U.S.C. § 20109(a)(1)(C) and (a)(4) in each document, but has continuously asserted claims under both these statutes.

of analysis that providing information about an injury caused by the carrier's negligence, which could give rise to liability under the FELA, can constitute protected activity under § 20109(a)(1).").

Defendant KCSR takes issue with each allegation of protected activity. As to section (a)(1)(C), the Defendant asserts that the Plaintiff's testimony did not constitute a report and even if it did, it was not made to a person "with supervisory authority over the employee or such other person who has the authority to investigate, discover, or terminate the misconduct." 49 U.S.C. § 20109(a)(1)(C). Initially, the Court here agrees with the Plaintiff that the Plaintiff's testimony counts as a "report" under section (a)(1)(C) and that FRSA protections are not limited to only the first report of an incident. Black's Law Dictionary defines a "report" in part as "[a] formal oral or written presentation of facts or a recommendation for action." BLACK'S LAW DICTIONARY (10th Ed. 2014). Nothing in that definition requires that a report be the first instance. *See also Monohon v. BNSF Railway Co.*, 2016 WL 7426581, at *3 (S.D. Iowa May 11, 2016) ("To receive FRSA protection, Mr. Monohon must have 'report[ed]' his concerns. BNSF understands 'report' to mean 'reveal' . . . The word's plain meaning does not require that . . . Nor does any of the FRSA caselaw.").

Nevertheless, Defendant KCSR additionally asserts that the Plaintiff's testimony was not made to someone with authority to address the misconduct reported. The Defendant cites to *Kuduk v. BNSF Railway Co.*, 980 F. Supp. 2d 1092, 1099 (D. Minn. 2013), in which the District Court of Minnesota held that an employee's report to a union representative was not protected activity under FRSA. However, the Court notes that

undisputed facts reflect that Defendant KCSR's FELA defense counsel was present at the Defendant's deposition testimony, and that such testimony in this case constituted "information or assistance . . . provided to or an investigation stemming from the provided information . . . conducted by . . . a person with supervisory authority over the employee or such other person who has the authority to investigate, discover, or terminate the misconduct." 49 U.S.C. § 20109(a)(1)(C). *See also In the Matter of: Kenneth LeDure v. BNSF Railway Co.*, ARB Case No. 13-044, 2015 WL 4071574, at *3 (DOL Adm. Rev. Bd. June 2, 2015) ("[I]f BNSF retaliated against LeDure for discussing his 2008 work injuries in the FELA case, we see no reason why the 2008 protected activity would lose its protected status when it is also discussed in a FELA case. Retaliation for later notifications of the same injury is just as unlawful as retaliation for the initial notice.").

Next, the Defendant asserts that the Plaintiff's testimony was not a proper "notification" under section (a)(4) because the railroad was already aware of the injuries at the time of the testimony. The Plaintiff asserts that it was a proper notification because he provided new details. Under the plain language of the statute, the protected notification is "of a work-related personal injury or work-related illness of an employee." Here, the Court finds in the undisputed facts that KCSR had previously been notified of Mr. Dunaway's injury back in late 2011. *See, e. g.*, *BNSF Railway Co. v. U.S. Dept. of Labor Administrative Review Board*, 867 F.3d 942, 948 (8th Cir. 2017) ("The ALJ found that Thompson, who initiated the first investigation in January 2012, knew of Carter's injury 'on the date it occurred or very soon thereafter,' so it is clear the FELA litigation did not notify Thompson of Carter's injury."). Nevertheless, fact questions remain as to whether

the claimant's testimony constituted "more specific notification of the nature and extent" of Mr. Dunaway's injury. *See LeDure*, 2015 WL 4071574, at *4 ("BNSF's admission confirms that the FELA litigation constituted more specific notification of the nature and extent of LeDure's work-related injury. Consequently, we affirm the ALJ's finding that the more specific notification provided during the FELA claim in this case is protected activity").

Third, Defendant KCSR argues that the Plaintiff's testimony was not a good faith report under section (b)(1)(A) because no hazardous condition existed on the day he gave his deposition testimony, and they had already been previously notified of the hazard that existed at the time of Mr. Dunaway's injury. But as with section (a)(1)(C), the Court finds that the language of (b)(1)(A) is not exclusive to the first report made. *LeDure*, 2015 WL 4071574, at *3 ("[I]f BNSF retaliated against LeDure for discussing his 2008 work injuries in the FELA case, we see no reason why the 2008 protected activity would lose its protected status when it is also discussed in a FELA case. Retaliation for later notifications of the same injury is just as unlawful as retaliation for the initial notice."). *See also Monohon*, 2016 WL 7426581, at *3-4 ("The argument appears to be that because other whistleblower statutes require that the information not already be known to the public or the employer, so must this one. Those statutes are not analogous to the FRSA. . . . [H]istory teaches courts not to routinely read 'first to report' requirements into whistleblower status; this Court therefore declines to do so.").

Furthermore, Defendant KCSR contends that the Plaintiff was not an employee at the time of his protected activity. The relevant undisputed facts reflect that the claimant

was an employee of the railroad on December 27, 2011, when his co-worker Mark Dunaway was injured while working with the Plaintiff. The Plaintiff became a witness in Mr. Dunaway's case against KCSR when Mr. Dunaway filed suit against KCSR on December 17, 2012. On August 15, 2013, the Plaintiff was dismissed from employment with the railroad following a workplace rule violation unrelated to Mr. Dunaway's case. On September 13, 2013, the Plaintiff gave his deposition in Mr. Dunaway's case against KCSR. On July 18, 2014, the Public Law Board found that the Plaintiff had violated rules but that dismissal was too severe a punishment. His employment was therefore reinstated, including seniority and vacation rights, but without back pay.

Defendant KCSR then states in an aside that the Plaintiff's claims under the FRSA are not applicable because the Plaintiff was not an employee of the railroad at the time he provided the deposition testimony. The Plaintiff, however, contends that he continued to be an employee of KCSR during the time he gave the deposition in Mr. Dunaway's case, because he was ultimately reinstated as an employee, upon a finding that termination was excessive and not appropriate. In light of the undeveloped nature of this argument and the undisputed fact that the Plaintiff was ultimately reinstated with his seniority intact, the Court finds that the Plaintiff was, in fact, an employee at the time he provided his deposition testimony.

Defendant KCSR then argues that even if the Plaintiff was an employee and did engage in protected activity, the decisionmaker was not aware of it, and, further, that any protected activity was not a contributing factor to the decision to terminate his employment. "To establish a violation under FRSA, a complainant must show that the protected activity

was a 'contributing factor' in the adverse employment action. The [Administrative Review Board] defines a 'contributing factor' as 'any factor which alone or in combination with other factors, tends to affect *in any way* the outcome of the decision.'" *BNSF Railway Company v. U.S. Dept. of Labor*, 816 F.3d 628, 638 (10th Cir. 2016) (internal citations omitted) (emphasis in original). The material fact disputes between the parties on these points, however, remain numerous. Viewing this evidence in the light most favorable to Plaintiff, *see Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009) ("We consider the evidence in the light most favorable to the non-moving party[.]") [citation omitted], the Court finds that such fact issues preclude summary judgment. *See* Fed. R. Civ. P. 56(a) ("The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law.").

In summary, the Defendant Kansas City Southern Railway is not entitled to judgment in its favor with regard to Plaintiff Deon Roop as a matter of law. Accordingly, IT IS ORDERED that the Defendant The Kansas City Southern Railway Company's Motion for Summary Judgment [Docket No. 45] is hereby DENIED.

**DATED** this 26th day of October, 2017.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma